# Exhibit 1

1    Larry J. Crown (SBN 013133)
     Elan S. Mizrahi (SBN 017388)
2    **TITUS BRUECKNER & LEVINE PLC**
     8355 East Hartford Drive, Suite 200
3    Scottsdale, Arizona 85255
     Telephone:   480-483-9600
4    Facsimile:    480-483-3215
     Emails:      lcrown@tbl-law.com
5               elan@tbl-law.com

6    *Attorneys for Defendants*

7

8           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9               **IN AND FOR THE COUNTY OF MARICOPA**

10

| | |
|---|---|
| ANGELYCA TORRES, a married woman, | Case No. CV2016-002516 |
| Plaintiff, | **NOTICE OF REMOVAL TO FEDERAL COURT** |
| vs. | |
| JAMES HAHN, in his individual and marital capacities and in his official capacity; MICHAEL GIANNINI, in his individual and marital capacities and in his official capacity; JOHN LARSON, in his individual and marital capacities and his official capacity; LARRY HALL, in his individual and marital capacities and in his official capacity; CITY OF BUCKEYE, Arizona, | (Assigned to the Honorable Kerstin LeMaire) |
| Defendants. | |

23    **TO:    THE CLERK OF THE SUPERIOR COURT AND ALL PARTIES HERETO**
24          **AND THEIR ATTORNEYS**

25        Defendants City of Buckeye, James Hahn, Michael Giannini, John Larson, and Larry

26    Hall, by and through counsel undersigned, and pursuant to 28 U.S.C. § 1441 *et seq.*, hereby

27    notify this Court that they have filed a Notice of Removal of this action to the United States

28    District Court for the District of Arizona, Phoenix Division. A copy of the Notice of

*(left margin, vertical)* **TITUS BRUECKNER & LEVINE PLC**   8355 East Hartford Drive – Suite 200   Scottsdale, AZ 85255   480-483-9600

- 1 -

Removal is attached to this Notice as **Exhibit A** and is served contemporaneously herewith.

DATED this __7th__ day of June, 2016.

**TITUS BRUECKNER & LEVINE PLC**

By: /s/ *Larry J. Crown*
    Larry J. Crown
    Elan S. Mizrahi
    *Attorneys for Defendants*

ORIGINAL of the foregoing filed electronically via AZTurboCourt on this __7th__ day of June, 2016 with:

The Clerk of the Court
Maricopa County Superior Court
201 West Jefferson Street
Phoenix, Arizona 85003-2243

COPY of the foregoing delivered electronically this __7th__ day of June, 2016 to:

The Honorable Kerstin LeMaire
Maricopa County Superior Court Judge

COPY of the foregoing mailed on this __7th__ day of June, 2016 to:

Larry L. Debus, Esq.
Tracey Westerhausen, Esq.
Gregory M. Zamora, Esq.
**DEBUS, KAZAN & WESTERHAUSEN, LTD.**
335 East Palm Lane
Phoenix, AZ 85004
*Attorneys for Plaintiff*

/s/ *Karin A. Meister*

8962-034

TITUS BRUECKNER & LEVINE PLC
8355 East Hartford Drive – Suite 200
Scottsdale, AZ 85255
480-483-9600

# Exhibit 2



COPY

MAR 2 5 2016

MICHAEL K. JEANES, CLERK
J. CASTRO
DEPUTY CLERK

1   Larry L. Debus, State Bar No. 002037
    Tracey Westerhausen, State Bar No. 010518
2   Gregory M. Zamora, State Bar No. 032470
3   Debus, Kazan & Westerhausen, Ltd.
    335 East Palm Lane
4   Phoenix, AZ 85004
    Telephone:  (602) 257-8900
5   Facsimile:  (602) 257-0723
    Email: lld@dkwlawyers.com
6   Email: tw@dkwlawyers.com
7   Email: gmz@dkwlawyers.com
    Attorneys for Plaintiff Torres

8              **In the Superior Court of the State of Arizona**

9                   **In and for the County of Maricopa**

10  Angelyca Torres, a married woman,          )
                                               )  Case No.   CV2016-002516
11                         Plaintiff,          )
12                                             )
                                               )
13  -vs-                                       )
                                               )  **Complaint**
14  James Hahn, in his individual and marital  )
    capacities and in his official capacity;   )
15  Michael Giannini, in his individual        )
16  and marital capacities and in his official )
    capacity; John Larson, in his individual   )
17  and marital capacities and his official    )
    capacity; Larry Hall, in his individual    )
18  and marital capacities and in his official )
19  capacity; City of Buckeye, Arizona,        )
                                               )
20                         Defendants.         )
21  _____)

22          Plaintiff, Angelyca Torres, alleges as follows:

23                              **Parties**

24

25       1.    Angelyca Torres (hereafter, Mrs. Torres) is and was at all relevant times a

26  resident of Maricopa County, Arizona. She was twenty-eight weeks pregnant when she

27
    was unlawfully detained by Defendant Hahn and Defendant Giannini of the Buckeye
28

                                       1

Police Department and forced to stand for hours in the Arizona heat as is more fully described herein.

2.    Defendant Sergeant James Hahn (#3367) at all times relevant to this Complaint was a duly appointed and acting Sergeant of the Buckeye Police Department (hereafter BPD), acting under color of law and within the scope of employment pursuant to the statutes, ordinances, regulation, policies, customs, and usage of the City of Buckeye and the BPD.

3.    Defendant Officer Michael Giannini (#3732) at all times relevant to this Complaint was a duly appointed and acting Officer of the BPD, acting under color of law and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Buckeye and the BPD.

4.    Defendant Officer John Larson (#0446) at all times relevant to this Complaint was a duly appointed and acting officer of the BPD, acting under color of law and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Buckeye and BPD.

5.    Defendant Chief Larry Hall at all times relevant to this Complaint was a duly appointed and acting Chief of Police of the BPD, acting under color of law and within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of Buckeye and BPD.  Defendant Larry Hall was responsible for the policies, practices, and customs of the BPD as well as the supervision of the law enforcement personnel.

6.     Defendant City of Buckeye is a municipal entity duly organized under the laws of the State of Arizona, was the employer of the individual defendants Sergeant James Hahn and Officer Michael Giannini, and is and was at all times relevant to this Complaint responsible for the policies, practices and customs of the BPD.  The BPD is a department of the City of Buckeye.

### Jurisdiction & Venue

7.     All the acts complained of occurred in Buckeye, Maricopa County, Arizona where jurisdiction and venue are proper.

8.     A proper and timely Notice of Claim pursuant to Arizona law was served upon each named Defendant, and over sixty (60) days has passed since that service.

### Factual Allegations

### The Incident in Question

9.     Most of the information contained herein was obtained from audio and video recorded from Defendant Hahn's person and patrol vehicle.

10.     On March 26, 2015, Mrs. Torres and her two young children – five-year-old Karyme, and three-year-old Ivan, Jr., got into their 2007 Blue Honda Odyssey Minivan bound for a trip to visit her mother-in-law in Sonoyta, Mexico.  Their plan was to eat dinner and purchase a few items from the local market.

11.     Mrs. Torres never made it to her mother-in-law's home.  Rather, she was unlawfully detained on the side of the road, required to stand in the Arizona heat for hours while 28 weeks pregnant, subjected to a humiliating interrogation, had all her cash

unlawfully seized, and had her vehicle unlawfully impounded – all without the benefit of probable cause.

12.    On March 26, 2015, at 4:26 p.m. Defendant Hahn conducted a traffic stop pulling over Mrs. Torres on State Route 85 at mile post 121, in Buckeye, Arizona.

13.    Mrs. Torres was driving her 2007 Blue Honda Odyssey Minivan.

14.    Defendant Hahn approached Mrs. Torres's vehicle and told her that one of the reasons she was stopped was because Ivan, Jr., did not have his seat belt on.

15.    As Defendant Hahn questioned Mrs. Torres and asked for the usual documents (license, registration, and proof of insurance).

16.    At 4:29 p.m., after only a brief conversation with Mrs. Torres, Defendant Hahn ordered Mrs. Torres to exit the vehicle.

17.    Although confused as to why Defendant Hahn was ordering her out of her vehicle, Mrs. Torres complied.

18.    Mrs. Torres exited her vehicle and was visibly pregnant.  At the time, Mrs. Torres was twenty-eight (28) weeks into her pregnancy.  Her pregnancy was not an easy one.  She was hospitalized twice (December 26 and 29, 2014) for vaginal bleeding and dizziness.  She was instructed to not stand for long periods of time until she stopped bleeding.  She was bleeding in March 2015, when Defendant Hahn pulled her over. Throughout Defendant Hahn's entire interaction with Mrs. Torres (nearly two hours), he never asked whether Mrs. Torres needed medical assistance or offered any even though he knew that she was pregnant.

19.   Outside the vehicle, Defendant Hahn questioned Mrs. Torres briefly regarding her unbuckled son.

20.   Defendant Hahn then began to interrogate Mrs. Torres with a barrage of questions irrelevant to the reason he pulled her over.

21.   Mrs. Torres was again confused by Defendant Hahn's questions.

22.   Defendant Hahn asked Mrs. Torres where she was going and why. She told him that she was travelling to Sonoyta (Mexico) to visit her mother-in-law (her children's "Nana." "Nana" is Spanish for "grandmother").

23.   Defendant Hahn asked Mrs. Torres how long she going to be in Mexico. She told him that it was going to be a short trip. She never told him when she planned to return home.

24.   Defendant Hahn asked Mrs. Torres when the last time she had been down to Mexico was. She told him a month ago.

25.   Defendant Hahn asked Mrs. Torres why her husband, Mr. Garcia, was not accompanying her to Mexico. She told him that Mr. Garcia did not have the proper immigration documents.

26.   At 4:30 p.m., Defendant Hahn ordered Mrs. Torres to stand outside and wait near his police vehicle. She remained outside in the sun (28 weeks pregnant and on her feet). Karyme and Ivan, Jr., remained unsupervised in her vehicle.

27.   At 4:36 p.m., Mrs. Torres asked Defendant Hahn if she could wait in her vehicle with her children. He replied, "Sure."

28.     At 4:37 p.m., Defendant Giannini arrived at the scene and sat with Defendant Hahn in his police vehicle.

29.     Defendant Hahn and Defendant Giannini discussed the traffic stop.  During this conversation, Defendant Hahn did not mention that he had suspected Mrs. Torres of having a large amount of money with her.

30.     Defendant Hahn told Defendant Giannini that Mrs. Torres was going to Sonoyta, Mexico, to have dinner with her husband's mother and that her husband is an "illegal."

31.     Defendant Hahn told Defendant Giannini that Mrs. Torres had told him that she was coming back home later on that same night.  Mrs. Torres never said that. Defendant Hahn lied to create the appearance that Mrs. Torres was being untruthful about her trip to Mexico.  He stated that driving to Sonoyta is a long trip "just for dinner."

32.     Defendants Hahn Giannini searched the "Mexico crossing" database, but neither man was able to ascertain any information.

33.     At 4:38 p.m., twelve minutes into his "investigation," Defendant James evaluated the potential assets he could seize.  Defendant Hahn discovered that Mrs. Torres's vehicle did not have a lien on it and told Defendant Giannini.  A vehicle without a lien means that no creditor would have a superior claim to the vehicle if law enforcement seized Mrs. Torres's vehicle. Defendant Hahn's intentions were to seize Mrs. Torres vehicle for the benefit of law enforcement.

34.     With that motivation, at 4:41 p.m., Defendant Hahn returned to Mrs. Torres's vehicle and continued to interrogate her about her trip to Mexico.  Although travelling to Mexico is not a crime, he asked her:

A.     Why was she going to see her children's "Nana?"  She replied that she was taking "Nana" diapers and supplied because Nana had been sick.

B.     When did she last speak to "Nana?"  She replied that her husband, Mr. Garcia, spoke to "Nana," and that he speaks with her every three days.

C.     When did she tell "Nana" she was coming to visit?  She replied earlier in the week.

D.     Does "Nana" have a phone? She replied, "Yeah, but I don't know it by memory.  My husband calls her."

E.     Was there anything illegal in her vehicle? She replied no.

F.     Did she have any weapons in her vehicle?  She replied no.

G.     Did she have any drugs in her vehicle?  She replied no.

35.     Defendant Hahn continued his interrogation but he focused on the money. He asked Mrs. Torres if she had any money in her vehicle.  Mrs. Torres told him that she had approximately $5,000 in cash from her income tax returns.

36.     Defendant Hahn's continued to interrogate Mrs. Torres about the money. He asked her:

A.     Why did she have the money?

B.     Where did she work?

C.     How much was her return from her taxes?

D.    How much money did she make that year?

E.    Where did her husband work?

37.    Mrs. Torres had legitimate and lawful answers to all of Defendant Hahn's questions.

38.    At 4:45 p.m., Mrs. Torres told Defendant Hahn that it was "so hot" outside.

39.    Defendant Hahn asked Mrs. Torres if he could search her vehicle.

40.    Mrs. Torres allowed Defendant Hahn to search her vehicle.

41.    Defendant Hahn ordered Mrs. Torres and her children out of the vehicle while he searched it.

42.    While Defendant Hahn and Defendant Giannini searched the vehicle, Defendant Hahn found Mrs. Torres's purse with the money in it.  He told Defendant Giannini that there was more than $5,000 in the purse.

43.    At 4:48 p.m., Defendant Hahn walked back to Mrs. Torres (who remained in the outside in the sun with her children as ordered) and continued to interrogate her. He wanted to know where the money came from and how much was really there.  Mrs. Torres told him that she spent some of it at Walmart and did not know exactly how much money she had.

44.    At 4:52 p.m., Mrs. Torres attempted to answer his questions, but told Defendant Hahn that "it's really hot."  Defendant Hahn replied "oh, I know."  He was aware of the extreme heat conditions and did nothing about help Mrs. Torres escape it.

45.    At 4:53 p.m. (twenty-seven minutes after pulling Mrs. Torres over), Defendant Hahn called Defendant John Larson.  Defendant Hahn asked Defendant John

Larson if he could use his services and requested that Defendant John Larson leave immediately.

46.    Defendant Hahn returned to Mrs. Torres and her children, and interrogated her about what kind of vehicle she had and how much she paid for it.  He had no reason to ask Mrs. Torres these questions and no reason to believe that Mrs. Torres had engaged in unlawful conduct.

47.    At 4:55 p.m., Mrs. Torres asked Defendant Hahn is she could have some water.

48.    At 4:56 p.m., Defendant Hahn went back to Mrs. Torres's vehicle and said, "What do you say I give her a quick count," referring to Mrs. Torres's money.  He told Defendant Giannini that he counted just under $7,000.

49.    At 5:04 p.m., Defendant Hahn asked Mrs. Torres if he could look at her cell phone.  She agreed.  Mrs. Torres had no idea why she was being asked questions and detained.  She asked Defendant Hahn why he needed her phone, and he told her that he finds evidence on phones.  Defendant Hahn had not told Mrs. Torres that she was being "investigated" for a crime.

50.    Defendant Hahn asked Mrs. Torres if either she or her husband have ever been arrested.  He asked for her husband's name and date of birth.

51.    Ivan, Jr., asked for more water again.

52.    Defendant Hahn continued to interrogate Mrs. Torres.  He asked her more about her income taxes and where she banks.  He was obviously attempting to stall Mrs.

Torres until Defendant John Larson arrived.  Twenty minutes after Defendant Hahn called for the K-9 officer, he finally tells Mrs. Torres that a "dog" was on its way.

53.    Defendant Hahn told Mrs. Torres that she could not have gotten $8,000 back from her taxes.  He had no basis for this assertion.  He asked her if she had a copy of her tax returns.  Normally, people do not keep copies of their tax returns in their vehicles.  Mrs. Torres points out that her tax return is at home.  He asked Mrs. Torres to have her husband take a picture of her tax returns, in her home, and send it to her phone.  It is unreasonable to ask anyone carrying any sum of money to also provide a copy of their tax returns as proof that the money is legitimate.

54.    Defendant Hahn told Mrs. Torres that he was going to use her cell phone to call her husband.

55.    Defendant Giannini asked Defendant Hahn if he wanted to leave the $150 found in the glove compartment inside the vehicle.  Defendant Hahn told him to leave it in the vehicle for now.  Defendant Hahn had every intention to seize all of Mrs. Torres money.

56.    At 5:17 p.m., after over thirty (30) minutes in the sun with her children, Ms. Torres asked Defendant Hahn if she could get into a car with Karyme and Ivan, Jr., to escape the heat.   Defendant Hahn did not allow her to do so.

57.    Defendant Hahn asked another officer if he could put the kids in that officer's vehicle.  That officer said that he did not think his car was cooler than outside.  Defendant Hahn replied, "I don't want to put them in [my] car."  Mrs. Torres and her children remained outside in the heat.

58.     Defendant Hahn called Mr. Garcia using Mrs. Torres's phone.   Defendant Hahn asked Mr. Garcia how he was doing and Mr. Garcia replied, "yes." Defendant Hahn then asked Mr. Garcia what his wife's name was and Mr. Garcia replied, "Angelyca, what happened?" Defendant Hahn did not tell Mr. Garcia what was happening to his wife.

59.     Defendant Hahn, rather, began to interrogate Mr. Garcia.  He asked Mr. Garcia what his wife's name was?  He replied, "Angelyca."

60.     Defendant Hahn asked Mr. Garcia where his wife was going.  He replied to Mexico to see his mom.  Mr. Garcia's answers corroborated Mrs. Torres's statements to Defendant Hahn.  Yet, Defendant Hahn continued to interrogate Mr. Garcia.

61.     Defendant Hahn asked Mr. Garcia when Mrs. Torres was coming back home.  Mr. Garcia replied either that same day or the next day, he was not really sure. Again, Mr. Garcia's answers corroborated Mrs. Torres's statements.

62.     Mr. Garcia does not speak English well.  Mr. Garcia told Defendant Hahn that he could not understand him and that he needed an interpreter.

63.     Defendant Hahn continued his interrogation in broken Spanish.  Defendant Hahn said that he could not understand Mr. Garcia.  Rather than finding an interpreter, Defendant Hahn invited miscommunication by continuing his interrogation.

64.     Mr. Garcia continued to ask Defendant Hahn what was wrong with his wife, Mrs. Torres.  Defendant Hahn refused to answer him, and never assured Mr. Garcia that his wife and children were safe.

65.   Mr. Garcia experienced extreme stress and anxiety after Defendant Hahn's phone call because he did not know if his wife and children were hurt or safe.

66.   Defendant Hahn made what appeared to be a joke to another officer questioning the veracity of Mr. Garcia's contention that he did not speak English well.

67.   At 5:26 p.m., Defendant Hahn continued to interrogate Mrs. Torres. He confronted Mrs. Torres with Mr. Garcia's alleged statement that Mrs. Torres was taking the money to Mr. Garcia's mother to purchase a car. Mr. Torres did not say that to Defendant Hahn.

68.   Although Mrs. Torres provided truthful statements to Defendant Hahn, he continued to interrogate her about her money. He told her over and over that she was lying to him and that she needed to tell him the truth. Mrs. Torres was telling him the truth, but because Defendant Hahn wanted to seize her money and vehicle he refused to believe her.

69.   Mrs. Torres and her children continued to stand outside in the heat while Defendant Hahn waited for the K-9 unit to arrive. Thirty-seven minutes after calling for a K-9 unit, Defendant John Larson arrived. At this point, Mrs. Torres, Karyme, and Ivan, Jr., had been standing outside for nearly an hour.

70.   Defendant Hahn took the purse with Mrs. Torres's money out of her vehicle and allowed the K-9 to search the vehicle. The K-9 did not alert. Defendant John Larson placed the K-9 in his patrol vehicle. Defendant Giannini then placed the money back into Mrs. Torres's vehicle.

12

71.     At 5:40 p.m., Defendant Hahn turned off his vest microphone. He was still interrogating Mrs. Torres and his official business was not complete. He should not have disabled his microphone. However, he walked over the Defendant John Larson's car and had a conversation with him, with no audio recording, for five minutes. Defendant Hahn never turned his vest microphone back on.

72.     Defendant John Larson then takes the K-9 from his patrol vehicle and searched Mrs. Torres's vehicle again. The K-9 allegedly alerted twice.

73.     Defendant Hahn told Mrs. Torres that they were taking her money and her car. This conversation was recorded on the microphone in Defendant Hahn's patrol vehicle.

74.     Mrs. Torres asked why her belongings were being taken. Defendant Hahn told her because she was money laundering. There were no facts that supported that accusation.

75.     Ivan, Jr., stood outside crying while Karyme tried to comfort him with a hug. Mrs. Torres was extremely upset because she heard her children crying for help, but could do nothing to assist them.

76.     Mrs. Torres asked to use her cell phone to call her husband to come pick her up. Defendant Hahn told her that she could not use her phone, but instead offered to call someone for her. Mrs. Torres asked him to call her husband. Defendant Hahn said, "Okay, I'll call Ivan (Mr. Garcia) in a minute." Defendant Hahn continued to leave Mrs. Torres and and children outside in the heat.

77.     Mrs. Torres tried to escape the sun and heat by getting back inside her vehicle.

78.     Defendant Hahn jumped out of his air-conditioned patrol vehicle and told her that she could not get into her vehicle and that she needed to remain standing in front of his.

79.     Mrs. Torres asked if Defendant Hahn had called her husband yet. Defendant Hahn replied, "I already told her I'd call Ivan."

80.     Defendant Hahn never called Mr. Garcia stating only "she can just go with the tow truck. I'm tired of her lies and whining. She can go with the tow truck and make her own calls."

81.     Defendant Hahn continued, "I'm done with her to be honest with you. I'm getting parched, you know what I mean. My lips are getting chapped. I don't really have anything to say to her."

82.     Mrs. Torres again asked Defendant Giannini (for a third time) if Defendant Hahn had called her husband to pick her up. Defendant Giannini asked Defendant Hahn if he had and he replied, "no, she can call Ivan when she gets to where the tow truck drops her off." He continued, "You can't even tell the truth about anything. I'm not gonna do you any favors. You lie about everything . . . ."

83.     Mrs. Torres told Defendant Hahn that she did not feel comfortable getting into a tow truck with her children because she did not know who the tow truck driver was. Defendant Hahn replied, "For someone who just got caught doing a criminal act you are very, very picky aren't you?"

14

84.    Mrs. Torres was extremely concerned for her safety and that of Karyme and Ivan, Jr.

85.    Defendant Hahn ordered Mrs. Torres to go back to the side of the road. He then said to Defendant Giannini, "That's a little princess right there."

86.    An "Officer Pete" driving a Jeep Wrangler with the top off pulled up next to Defendant Hahn. Defendant Hahn said, "She doesn't want to go with the tow truck because she doesn't know the driver. She has to meet him and feel him out first but we don't have time for that, Pete."

87.    Defendant Hahn then takes a phone call. He states, "Still out here on the traffic stop. About eight grand and a 2005 Honda minivan. Yeah, good van. It would be good for the county you know. Good for surveillances. I don't know how many miles are on it. She looks clean on the outside and inside. Gotta get that money hit." Defendant Hahn's primary motivation for stopping Mrs. Torres was to seize her van and any assets she had.

88.    Ivan, Jr., began to cry. Defendant Hahn told "Officer Pete" that, "He'll probably be crying for a while. Every time he gets in the car without the head rest movie theater." Mrs. Torres's vehicle had video screens in the head rests.

89.    At approximately 6:15 p.m., nearly two hours after the initial traffic stop, "Officer Pete" transported Mrs. Torres and her children to a gas station. Mrs. Torres and her children had been standing outside in the heat for nearly the entire traffic stop.

90.    Defendant Hahn then took a personal phone call with his significant other. He stated, "Oh, Pete, from DPS, he's headed up to Goodyear to Total Wine to get a bottle

of Mount Creek . . . So, anyway, he's got the top off his Jeep and it's 91 (degrees) out! Fuck that!" He then apologized for being late today and said, "Yep, got money and a minivan." Defendant Hahn was aware of the extreme heat, yet he forced Mrs. Torres to stand for hour in it with her children.

91.    Defendant Hahn then said to Defendant Giannini, "I'm telling you, I told you it would all pan out. It's all a team effort, Mike. I know you were frustrated. I'm telling you, don't worry. Obviously, it doesn't look good. But they don't . . . they don't . . . ." Defendant Hahn's primary motivation was to unlawfully seize Mrs. Torres's money and vehicle.

92.    Defendant Hahn realized that his in-car microphone was still on and recording. Defendant Hahn turned the in-car microphone off and nothing else was recorded.

93.    Defendant Hahn did not find anything illegal inside Mrs. Torres van.

94.    Defendant Hahn did not elicit any incriminating statements from Mrs. Torres.

95.    The only "evidence" Defendant Hahn had was money. Carrying money is not a crime or evidence of a crime.

96.    Defendant Hahn seized, without benefit of a warrant or probable cause, Mrs. Torres's money, phones, and vehicle. They were never returned to her.

97.    Defendant Hahn's conduct and conversations throughout his "investigation" of Mrs. Torres illustrate that he had only one goal: to seize her money and vehicle of police use.

98.     Rather than cite Mrs. Torres of her civil traffic violation, Defendant Hahn interrogated her on the side of the road repeatedly asking her question about her trip to Mexico.

99.     A civil forfeiture action was commenced for the money and vehicle seized.

100.    Mrs. Torres has suffered pecuniary and non-pecuniary losses and damages as more fully set forth herein.

**Plaintiff's Claims**

**Count One**

**Federal Civil Rights Claims Under 42 U.S.C. § 1983 and Fourth**

**and Fourteenth Amendments (Unlawful Seizure)**

**Defendants Hahn, Giannini, and Larson**

101.    Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

102.    Defendant Hahn and Defendant Giannini are liable to Plaintiff for violation of 42 U.S.C. § 1983, which prohibits the deprivation under color of law of rights secured under the United States Constitution.   Defendant Hahn and Defendant Giannini deprived the Plaintiff of her rights to be free from unlawful seizures without probable cause as required by the Fourth and Fourteenth Amendments.

103.    The seizure was nonconsensual and warrantless.

104.    The seizure was not supported by probable cause.

105.    As a direct and proximate result of Defendants' unlawful actions, the Plaintiff sustained the damages more fully described herein.

## Count Two

### *Monell* Federal Civil Rights Claims Under 42 U.S.C. § 1983

### (Unlawful Seizure) – Defendant City of Buckeye

106.   Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

107.   The Defendant City of Buckeye directly and proximately caused the unlawful seizure at issue with its encouragement, toleration, ratification, and deliberate indifference to the following policy, pattern, practice, and custom, and to the need for more or different training, supervision, investigation, or discipline in the area of warrantless and unlawful seizures of people, vehicle, cash, and cell phones.

108.   As a direct and proximate result of the unlawful seizure, Plaintiff sustained damages more fully described herein.

109.   Plaintiff has no adequate remedy at law and will suffer serious and irreparable harm to her constitutional rights unless Defendants are enjoined from continuing their unlawful policies, practices, and/or customs which have directly and proximately caused such constitutional abuses.

### Count Three

### Federal Civil Rights Claims Under 42 U.S.C. § 1983 and Fifth and Fourteenth

### Amendments – All Defendants

110.   Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

111.   By their conduct, as described herein, Defendants are liable to Plaintiff for the violation, under color of law, of the constitutional right to be free from any deprivation of liberty without due process of law under the Fifth and Fourteenth Amendment to the United States Constitution.

112.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages.

## Count Four

### Violations of Arizona Law: Abuse of Process

### Defendants Hahn, Giannini, and Larson

113.   Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

114.   By initiating the traffic stop, Defendant Hahn and Defendant Giannini willfully used, threatened to use, agreed or failed to object to the use of process or procedure to accomplish an ulterior purpose for which the process or procedure was not designed, namely to unlawfully seize assets from unsuspecting motorists, in violation of their Constitutional rights, as alleged herein.

115.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff have suffered damages.

## Count Five

### Violations of Arizona Law: Intentional or Reckless Infliction of Emotional Distress

### Defendants Hahn, Giannini, and Larson

116.    Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein

117.    Defendants' acts and/or omissions, including threatening, intimidating under the color of state law, invasive conduct, failure to notify Mr. Garcia that Plaintiff Torres was safe, and failure to render aid the pregnant Plaintiff and her young children while they endured the dangerous Arizona heat, constituted extreme and outrageous conduct that inflicted emotional distress and physical injury and/or harm upon Plaintiff.

118.    Defendants' acts and omission were extreme, outrageous, and beyond all possible realms of decency and shock the conscience.

119.    Defendants' acts and omissions were intentionally aimed at causing Plaintiff extreme emotional distress and/or physical injury and/or harm and were done with reckless disregard of the near certainty that emotional distress and physical injury and/or harm would result from their conduct.

120.    Defendants' act and omissions constitute negligent, reckless, and/or intentional infliction of emotional distress.

121.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered damages.

### Count Six

### Negligence – All Defendants

122.    Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein.

123.   The Defendants owed the Plaintiff a duty of care to conduct a fair and impartial criminal investigation.  Defendant's owed Mrs. Torres a duty to prevent unlawful seizures without sufficient evidence of criminal conduct.

124.   Defendant City of Buckeye, and its employees, owed Mrs. Torres and duty to properly train and supervise their employees and agents.

125.   Those same Defendants breached their respective duties by failing to conduct reasonable investigations, causing and pursuing civil proceedings against Mrs. Torres and Mr. Garcia without sufficient evidence, and failing to properly training and supervise their employees.

126.   The nature of the Defendants' conduct constitutes negligence, or, in the alternative, gross negligence.

127.   As a direct and proximate result of Defendants' conduct, Mrs. Torres and Mr. Garcia sustained damages.

### Count Seven

### False Arrest – Defendants Hahn, Giannini Larson

128.   Plaintiff hereby incorporates by reference the preceding paragraphs as though fully set forth herein

129.   Defendant Hahn and Defendant Giannini initiated or took an active part in the investigation of a criminal action or civil proceeding against Mrs. Torres.

130.   Defendant Hahn and Defendant Giannini acted without probable cause.

131.   Defendant Hahn and Defendant Giannini acted with malice.

132.    As a direct and proximate result of Defendants' conduct, Mrs. Torres sustained damages.

### Damages

133.    Unlawful search;

134.    Unlawful seizure;

135.    Fear of harm to her unborn baby;

136.    Fear for the safety of her children;

137.    Unlawful detention;

138.    Loss of property.

### Jury Trial

139.    Plaintiff hereby requests a trial by jury.

### Request for Relief

Wherefore, Plaintiff Angelyca Torres requests the following relief:

140.    Compensatory, special, general, and punitive damages;

141.    Costs and attorneys' fees allowable under law;

142.    Any other relief deemed appropriate by the Court.

Dated this 25th day of March, 2016.

DEBUS, KAZAN & WESTERHAUSEN, LTD.

By _____
Larry L. Debus
Tracey Westerhausen
Gregory M. Zamora

22

Verification

State of Arizona    )
                  ) ss.
Count of Maricopa  )

      Angelyca Torres, being first duly sworn under oath, deposes and says that she is the Plaintiff and that she has read and understands the foregoing Complaint and that the same is true to her own knowledge or upon information and belief, and as to such matters she believes them to be true.

_Angelyca Torres_
Angelyca Torres

SUBCRIBED AND SWORN TO before me this _24_ day of March, 2016.

My commission expires:       _Diana K Shelton_
                                    Notary Public

Diana K. Shelton
Notary Public - Arizona
Maricopa County
My Commission Expires
January 2, 2019

**COPY**

MAR 2 5 2016



MICHAEL K. JEANES, CLERK
J. CASTRO
DEPUTY CLERK

Larry L. Debus, State Bar No. 002037
Tracey Westerhausen, State Bar No. 010518
Gregory M. Zamora, State Bar No. 032470
Debus, Kazan & Westerhausen, Ltd.
335 East Palm Lane
Phoenix, AZ 85004
Telephone:  (602) 257-8900
Facsimile:   (602) 257-0723
Email: lld@dkwlawyers.com
Email: tw@dkwlawyers.com
Email: gmz@dkwlawyers.com
Attorneys for Plaintiff Torres

**In the Superior Court of the State of Arizona**

**In and for the County of Maricopa**

| | |
|---|---|
| Angelyca Torres, a married woman, | ) |
| Plaintiff, | ) Case No.   **CV2016-002516** |
| -vs- | ) |
| | ) **Certificate of Compulsory Arbitration** |
| James Hahn, in his individual and marital | ) |
| capacities and in his official capacity; | ) |
| Michael Giannini, in his individual | ) |
| and marital capacities and in his official | ) |
| capacity; John Larson, in his individual | ) |
| and marital capacities and his official | ) |
| capacity; Larry Hall, in his individual | ) |
| and marital capacities and in his official | ) |
| capacity; City of Buckeye, Arizona, | ) |
| | ) |
| Defendants. | ) |

Plaintiff, through counsel undersigned, certifies that the largest award sought by the complainant, including punitive damages, but excluding interest, attorneys' fees, and costs does exceed limits set by Local Rule for compulsory arbitration.  This case is not subject to the Uniform Rules of Procedure for Arbitration.

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted this 25th day of March 2016.

DEBUS, KAZAN & WESTERHAUSEN, LTD.

By

Larry L. Debus
Tracey Westerhausen
Gregory M. Zamora

2